STATE OF NORTH CAROLINA
MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

CASE NO. 2 /21 CVS 16594

MECKLENBURG COUNTY, C.S.C.

BY _____

KAREMAH BUCHANAN,

        Plaintiff,

vs.

ELECTROLUX HOME PRODUCTS, INC.,

a for-profit corporation,

        Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Karemah Buchanan ("Plaintiff or "Buchanan"), by and through her undersigned attorneys, sues Electrolux Home Products, Inc. ("Defendant" or "Electrolux"), and upon information and belief, alleges:

## GENERAL ALLEGATIONS

1.    This is an action for damages in an amount of more than Ten Thousand Dollars ($10,000.00), but less than Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

2.    At the time of the filing of this Complaint, Plaintiff Buchanan was and is a resident of the State of South Carolina.

3.    At the time of the incident described herein which forms the basis of this action, specifically a fire caused by a defective clothes dryer, Plaintiff Buchanan was a resident of the Charlotte, Mecklenburg County, North Carolina.

EXHIBIT

2

4.      Upon information and belief, at all times material hereto, Defendant Electrolux was and is a for-profit Delaware corporation with its principal place of business and corporate headquarters located in Charlotte, Mecklenburg County, North Carolina.

5.      Upon information and belief, at all times material hereto, Defendant Electrolux was and is engaged in the business of designing, manufacturing, marketing, selling and distributing electric and gas clothes dryers, throughout the United States, including in Mecklenburg County, North Carolina.

6.      Upon information and belief, at all times material hereto, Defendant Electrolux did and continues to transact substantial and regular business in Mecklenburg County, North Carolina.

7.      The particular clothes dryer, a defective product which forms the basis of this action, was sold to and purchased by Plaintiff Buchanan in Mecklenburg County, North Carolina.

8.      The incident described herein which forms the basis of this action, specifically a fire caused by a defective clothes dryer manufactured by Defendant Electrolux, and the resulting damages and injuries suffered by Plaintiff Buchanan as a result of said fire, occurred in Mecklenburg County, North Carolina.

## BACKGROUND AND NATURE OF THE ACTION

9.      Defendant Electrolux is in the business of designing, manufacturing, marketing, selling, distributing and warranting consumer home appliances, including electric and gas clothes dryers under a variety of brand names, including Electrolux, Frigidaire and Kenmore (collectively "Electrolux Dryer(s)").

2

10. Upon information and belief, Frigidaire is a wholly-owned division of Defendant Electrolux.

11. Upon information and belief, "Frigidaire" is a trade name owned by Defendant Electrolux.

12. Defendant Electrolux holds itself out as a "global leader" in home appliances, as well as appliances for professional use, selling more than 40 million products to customers in 150 countries every year.

13. Defendant Electrolux's core design message is "thinking of you," a pledge to its customers that it pays a great deal of attention to detail when designing new products.

14. Over a period of several years, Defendant Electrolux has designed, manufactured, marketed, sold and distributed Electrolux Dryers that contain serious and dangerous defects, thereby unreasonably exposing its consumers, including Plaintiff Buchanan, to the risk of fire, serious bodily injury and substantial property damage and economic losses.

## FACTUAL ALLEGATIONS

10. In 2008, Plaintiff Buchanan purchased a clothes dryer, Model Number AEQ7000EGO, Serial No. XD64509631, designed, manufactured, marketed, warranted and sold into the stream of commerce by Defendant Electrolux under its Frigidaire brand name.

11. Plaintiff Buchanan purchased said clothes dryer "brand new" in Charlotte, North Carolina, from Aaron's Rental, an authorized seller of Defendant's products.

12. Said clothes dryer was delivered in its original packaging, and properly installed by Aaron's Rental in Plaintiff's laundry room located at her residence.

13. Thereafter, Plaintiff Buchanan used said clothes dryer only for its intended purpose of drying household laundry.

3

14. At all times, Plaintiff Buchanan used and maintained said clothes dryer in a reasonable manner and according to manufacturer's instructions.

15. The manner in which Plaintiff Buchanan used and maintained said clothes dryer was reasonably foreseeable by Defendant Electrolux.

16. On September 12, 2009, Plaintiff Buchanan's daughter was properly using said clothes dryer for its intended purpose; specifically she was drying a load of clothes in accordance with manufacturer's instructions provided by Defendant Electrolux.

17. On that date, shortly after starting said clothes dryer, Plaintiff's daughter was alerted to the presence of smoke coming from the laundry room.

18. Upon entering the laundry room, Plaintiff's daughter observed smoke coming from said clothes dryer and flames inside of the dryer cabinet.

19. Plaintiff Buchanan, unable to subdue the fire, called the fire department which responded to the scene. The fire was extinguished, but not before Plaintiff's residence and personal property suffered substantial fire, water and smoke damage.

20. After ensuring that her family was safely out of the home, and Plaintiff attempted to save some of her most valuable possessions and escape the burning premises, Plaintiff Buchanan suffered a number of significant personal injuries.

### The Defects

21. The Electrolux Dryers, and specifically the particular dryer purchased by Plaintiff Buchanan, had a defect in its design and manufacture, as more fully described herein, that caused it to malfunction during the expected useful life of the dryer, resulting in fire, significant property damage and personal injury to the Plaintiff.

4

22.     Specifically, Defendant Electrolux designed and manufactured the Electrolux Dryers, including the dryer purchased by Plaintiff Buchanan, with a front drum that failed to seal the drum and its contents from the surrounding cabinet, thereby allowing the accumulation of lint behind the drum and in the heater pan, areas that are not visible to or serviceable by the user.

23.     The accumulation of lint behind the drum and in the heater pan represents a known and unreasonable fire hazard as it is reasonably foreseeable that the clothes dryer's heat source will ignite the lint during normal use and in the manner the product was intended to be used.

24.     Defendant Electrolux also designed and manufactured the Electrolux Dryers, including the dryer purchased by Plaintiff Buchanan, with a combustible plastic air duct directly below the drum and a combustible plastic blower housing adjacent to that air duct, both of which accumulate lint during normal use, and both of which were not visible to or serviceable by users/consumers, including Plaintiff.

25.     Particles of lint that accumulate and ignite behind the drum and within the heater pan can travel into and through the drum to ignite lint that has accumulated in the dyer drum and/or within the combustible plastic air duct and blower housing.

26.     These defects, which manifest themselves during the useful life of the Electrolux Dryers, both within and outside of the warranty periods, are substantially likely to prevent the clothes dryers from being used as intended during their expected useful life, and pose significant risks to the lives and property of purchasers and users, including the Plaintiff.

27.     These defects, in fact, caused a fire in the dryer purchased by the Plaintiff, resulting in extensive damage to the Plaintiff's residence and personal property, as well as personal injury to her.

5

28.     Defendant Electrolux failed to adequately design, manufacture and test the Electrolux Dryers, including the dryer purchased by the plaintiff, to ensure they were free from defects at the time of sale.

29.     Plaintiff Buchanan used the dryer in a foreseeable manner and in the manner for which it was intended to be used.

30.     Defendant Electrolux failed to provide any adequate warnings to consumers, including Plaintiff Buchanan, that lint accumulates behind the drum and in the heater pan or within the combustible plastic air duct and blower housing or that this lint accumulation could start a fire.

31.     Consumers, including Plaintiff Buchanan, not only lacked any ability to see lint accumulating behind the drum and in the heater pan, or within the combustible plastic air duct and blower housing, but were unable to remove any accumulated lint in these parts of the clothes dryer without first dismantling the domes dryer and removing the drum.

32.     Due to the defect, the Electrolux dryer purchased by Plaintiff failed to operate normally, ultimately malfunctioning and causing significant property damage and personal injuries to the Plaintiff Buchanan.

33.     Defendant Electrolux did nothing to remedy, repair or replace the defective dryer drum or the defectively designed and manufactured Electrolux Dryers, including the dryer purchased by Plaintiff, and did nothing to remedy the unreasonable risk of fire, property damage and personal injury to Plaintiff Buchanan.

34.     Plaintiff Buchanan has incurred cost of repairs, damage to personal property damage and personal injury as a direct result of the defect in the Electrolux dryer she purchased.

6

35. The defects in Electrolux's design and manufacture of the Electrolux Dryers, including the dryer purchased by the Plaintiff, caused it to fail during its expected useful life, and within applicable warranty periods.

36. The Electrolux Dryers, including the dryer purchased by the Plaintiff, should have been usable for its intended purpose during its expected useful life, which The National Association of Home Builders ("NAHB") found in a 2007 study to be 13 years.

37. The defects in Electrolux's design and manufacture the Electrolux dryer existed at the time it was sold to Plaintiff and rendered it unfit for the ordinary and intended propose for which it was marketed and sold to Plaintiff.

38. Had the Electrolux dryer purchased by Plaintiff been free from defects, Plaintiff Buchanan would not have suffered the damages complained of herein.

39. At the time that Defendant designed, manufactured, marketed and sold the Electrolux Dryers, including the dryer purchased by Plaintiff, prevailing industry standards provided that the design of a clothes dryer would ensure that lint not be allowed to accumulate behind the dryer drum and in the internal mechanical and electrical components of the dryer where it was reasonable foreseeable they would combust resulting in fire.

40. At that time, engineering technology and materials were readily available that would have allowed Defendant Electrolux to correct the defect in the design of the Electrolux Dryers without substantially impairing the usefulness, practicality, or desirability of the Electrolux Dryers, and without incurring unreasonable expense.

### Electrolux's Actual or Constructive Knowledge of the Defects.

41. Defendant Electrolux either knew or should have known prior to selling the Electrolux Dryers to consumers, including the Plaintiff, that the Electrolux Dryers had defects

7

that would allow lint to accumulate behind the drum and in the heater pan or within the combustible plastic air duct and blower housing where it would likely ignite, resulting in property damage and personal injury.

42.     Moreover, upon information and belief, Defendant Electrolux became aware through various claims and reports about its defective dryers and was aware that the Electrolux Dryers, including the dryer marketed and sold to the Plaintiff, had defects that posed an unreasonable risk of fire, property damage and personal injury.

43.     Defendant Electrolux had a duty to consumers, including the Plaintiff, to disclose the defective nature of its Electrolux Dryers and specifically the defective nature of its dryer drums and not to conceal and suppress the defective nature of the Electrolux Dryers.

44.     Nonetheless, upon information and belief, Defendant Electrolux did and has concealed such defects and has failed to notify consumers, including the Plaintiff Buchanan, of the existence of the defects, has never issued a recall of the Electrolux Dryers despite the serious fire hazard, and never offered either to replace the defective components with defect-free components or replace the defective Electrolux Dryers.

45.     Instead, Defendant Electrolux has, upon information and belief, continued to falsely represent to consumers, including the Plaintiff, that the Electrolux Dryers are, in fact, free from defects and will perform their intended functions for their expected useful lives.

46.     Defendant Electrolux expressly warrants in writing that "Every Electrolux Major Appliances gas or electric dryer is guaranteed to be free of materials defects or component malfunctions."

47.     Defendant Electrolux also continues to make express written warranties to consumers, including the Plaintiff, through its marketing and advertising materials that its dryers

8

are free from defect and, at minimum, will dry consumers' clothes without damage or risk of fire. For example, Defendant Electrolux's website warrants that "our dryer is gentlest on your clothes thanks to our technology that gently tumbles clothes with exceptional temperature control to help protect fabric."

48. Defendant Electrolux knew or should have known that reasonable consumers, including the Plaintiff, were unaware of the defects and could not reasonably be expected to discover the defects.

49. Defendant Electrolux knew or should have known that reasonable consumers, including Plaintiff, expected the Electrolux Dryers to dry clothes effectively without putting their lives and property at risk.

50. Defendant Electrolux knew or should have known that reasonable consumers, including Plaintiff, expected Electrolux to disclose any defects that would prevent the Electrolux Dryers from performing their functions before the end of their useful lives or that would seriously threaten their property and personal welfare, and that such decision would impact their decision as to whether to purchase the Electrolux dryer. Such information, in fact, would have significantly impacted the Plaintiff's decision to purchase her dryer.

51. To this day, defendant Electrolux continues in this pattern of concealment and misrepresentation.

52. Defendant Electrolux has wrongfully placed on consumers, and especially Plaintiff Buchanan, the burden, expense and losses resulting from the defects in the Electrolux Dryers. Plaintiff has wrongfully been forced to incur the expense of replacing the Electrolux dryer she purchased, as well as the loss of her personal property and substantial medical expenses resulting from personal injuries she sustained as a direct result of the defective dryer.

9

53. Further, Plaintiff specifically alleges:

a) that the Electrolux Dryers, including the dryer purchased by Plaintiff was materially defective in its design and manufacture;

b) that the design defects of the Electrolux Dryers, including the dryer purchased by Plaintiff, represented an unreasonable risk of fire;

c) that Defendant Electrolux either knew or should have known that the Electrolux Dryers, including the dryer purchased by Plaintiff, were materially defective;

d) that the Electrolux Dryers designed and manufactured by Defendant Electrolux, including the dryer purchased by the Plaintiff, were not of merchantable quality;

e) that the Electrolux Dryers designed and manufactured by defendant Electrolux, including the dryer purchased by Plaintiff, were likely to fail before the end of its reasonable expected life;

f) that the existence of the Electrolux Dryer's defect was and is a material fact reasonable purchasers, including the Plaintiff, would have considered in deciding whether to purchase a clothes dryer, and specifically the Electrolux dryer purchased by Plaintiff;

g) that the Electrolux Dryer's design defects resulted from Defendant Electrolux's negligence;

h) that Defendant Electrolux breached express warranties relating to the Electrolux Dryers, including the dryer purchased by Plaintiff, by failing to recall, replace, repair and/or correct defects in the Electrolux Dryers;

10

i) that Defendant Electrolux breached implied warranties of merchantability and/or fitness for a particular purpose relating to the Electrolux Dryers, including the dryer purchased by Plaintiff;

j) that Defendant Electrolux misrepresented the characteristics, qualities and capabilities of the Electrolux Dryers, including the dryer purchased by Plaintiff;

k) that Defendant Electrolux either knew or should have known of the defects prior to distributing the Electrolux Dryers to consumers, including Plaintiff Buchanan;

l) that Defendant Electrolux omitted, concealed from and/or failed to disclose in its communications and disclosures to consumers, including Plaintiff Buchanan, material information regarding the Electrolux Dryer's defects;

m) that Defendant Electrolux failed to warn consumers, including Plaintiff, regarding the defective Electrolux Dryers;

n) that Defendant Electrolux made fraudulent, false, deceptive and/or misleading statements in connection with the sale of Electrolux Dryers in its product literature and on its website, including those relating to standards, use and reliability;

o) that all of the claims of Plaintiff Buchanan arise out of Defendant Electrolux's conduct in designing, manufacturing, marketing, advertising, warranting and/or selling the defective Electrolux Dryers, including the dryer purchased by Plaintiff, and Defendant Electrolux's conduct in concealing the defects in the Electrolux Dryers;

11

p) that Defendant Electrolux knowingly, affirmatively and actively misrepresented and concealed the true character, quality and nature of the Electrolux dryers, including the dryer purchased by Plaintiff. Given Defendant Electrolux's failure to disclose this non-public information about the defective nature of the Electrolux Dryers - information over which it had exclusive control- and because Plaintiff Buchanan could not reasonably have known that Electrolux Dryers were thereby defective, Plaintiff Buchanan reasonably relied on Electrolux's knowing affirmative and/or ongoing concealment.

q) that Defendant Electrolux is estopped from raising any defense of laches due to their own unclean hands as alleged herein.

## COUNT I: Breach of Implied Warranties

54.    Plaintiff Buchanan re-alleges and incorporates herein by reference each preceding and subsequent paragraph as if fully set forth herein.

55.    The Electrolux Dryers, including the dryer purchased by Plaintiff Buchanan, was defectively designed and manufactured.

56.    The Electrolux Dryers, including the dryer purchased by Plaintiff, left Electrolux's facilities and control with a defect caused by defective design incorporated into the manufacture of the dryer.

57.    At all times relevant hereto, there was a duty imposed by law which requires that a manufacturer or seller's product be reasonably fit for the purposes for which such products are used, and that the product be acceptable in trade for the product description. This implied warranty of merchantability is part of the basis for the bargain between Defendant Electrolux and Plaintiff Buchanan.

12

58. Notwithstanding the aforementioned duty, at the time of delivery, the Electrolux Dryer sold to Plaintiff Buchanan was not merchantable.

59. Defendant Electrolux breached the implied warranty of fitness for a particular purpose in that the Electrolux Dryers, including the dryer purchased by the Plaintiff, were defective and not fit for its intended purpose.

60. Defendant Electrolux is aware of the particular purpose for which the Electrolux Dryers were intended, including the dryer purchased by Plaintiff, and Plaintiff Buchanan relied upon Electrolux's skill and judgment in deciding to purchase the Electrolux dryer.

61. Defendant Electrolux was notified of these breaches of implied warranties within a reasonable time after the defect manifested itself.

62. As a direct and proximate result of Defendant Electrolux's conduct and breach of its implied warranties, and the defects which rendered the Electrolux dryer purchased by Plaintiff unreasonably dangerous and unsafe and unfit for normal use as intended, Plaintiff Buchanan suffered damages, including but not limited to, destruction of the dryer, damage and loss of real and personal property, personal injury with resulting pain, suffering, mental anguish and physical disability, loss of past and future income and past and future medical expenses.

### COUNT II: Breach of Express Warranty

63. Plaintiff Buchanan re-alleges and incorporates herein by reference each preceding and succeeding paragraph as if fully set forth herein.

64. In its warranty to customers, Electrolux warrants in writing that its "Every Electrolux Major Appliance gas or electric dryer is guaranteed to be free of materials defects or component malfunctions."

13

65.     In its warranty to customers, Electrolux warrants in writing that it will "repair without charge any problem that occurs during the first year after purchase."

66.     The written Frigidaire warranty provided to Plaintiff with her dryer provides that "Electrolux will pay all costs for repairing or replacing any parts of this appliance that prove to be defective in materials or workmanship when such appliance is installed, used and maintained in accordance with the provided instructions."

67.     Additionally, Electrolux also makes express written warranty to consumers through its marketing and advertising materials that the Electrolux Dryers are free from defect and, at minimum, will dry consumers' clothes without damage or risk of fire. For example, Electrolux's website warrants that "our dryer is gentlest on your clothes thanks to our technology that gently tumbles clothes with exceptional temperature control to help protect fabric."

68.     These express written warranties were material and were part of the bargain between Defendant Electrolux and Plaintiff Buchanan.

69.     Within the express warranty period, Plaintiff Buchanan experienced problems with the Electrolux Dryer she purchased, as described herein.

70.     Defendant Electrolux was notified of the problem by Plaintiff Buchanan, but failed to provide a defect-free dryer and/or a defective free dryer drums to Plaintiff free of charge.

71.     The Electrolux Dryer purchased by Plaintiff Buchanan failed to operate normally and malfunctioned, causing a fire within the dryer which destroyed Plaintiff's clothes, damaged her personal property and caused her to suffer personal injuries.

14

72.   Contrary to Defendant Electrolux's express written warranties, Electrolux failed to provide a dryer free of defects and which could be used for their ordinary purpose of drying clothes without failure or unreasonable risk of fire.

73.   Defendant Electrolux breached its express written warranties to Plaintiff Buchanan in that the Electrolux Dryer she purchased failed to perform as represented by Electrolux, failed to provide non-defective replacement parts free of charge when they failed or malfunctioned during the warranty period.

74.   Defendant Electrolux has been put on notice of its breach of express written warranties by Plaintiff, who made warranty claims, demanded service and repair of the Electrolux dryer, and complained to Electrolux regarding the defective nature of the Electrolux dryer that she purchased and that Electrolux failed to replace it.

75.   As a direct and proximate result of Defendant Electrolux's conduct and breach of its express warranties, and the defects which rendered the Electrolux dryer purchased by Plaintiff unreasonably dangerous and unsafe and unfit for normal use as intended, Plaintiff Buchanan suffered damages, including but not limited to, destruction of the dryer, damage and loss of real and personal property, personal injury with resulting pain, suffering, mental anguish and physical disability, loss of past and future income and past and future medical expenses.

### COUNT III: Magnusson-Moss Act

76.   Plaintiff Buchanan re-alleges and incorporates herein by reference each preceding and succeeding paragraph as if fully set forth herein.

77.   The Electrolux Dryers, including the dryer purchased by the Plaintiff, are consumer products as defined in 15 U.S.C. § 2301(1).

15

78.    Plaintiff Buchanan is a consumers as defined in 15 U.S.C. § 2301(3). Buchanan is a consumer because she is a person entitled under applicable state law to enforce against the warrantor the obligations of its implied and written warranties.

79.    Defendant Electrolux is a supplier and a warrantor as defined in 15 U.S.C. § 2301(4) and (5).

80.    As described herein, Defendant Electrolux as the warrantor within the meaning of 15 U.S.C. § 2301, *et seq.*, committed several violations of state law, including breach of contract, breach of warranties and deceptive trade practices.

81.    Plaintiff Buchanan gave Defendant Electrolux an opportunity to cure pursuant to 15 U.S.C. § 2310(e) by *inter alia,* repeated contacts with Electrolux over the defect as described herein which notified Electrolux of the defect present in Plaintiff's dryer, but Electrolux failed to provide Buchanan with a defect free dryer drum and/or a defect free Electrolux Dryer.

82.    In connection with its sale of the Products, Defendant Electrolux gave an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability. Specifically, Electrolux warranted that the Electrolux Dryers, including the dryer purchased by the Plaintiff, were fit for its ordinary purpose, to dry the clothes of consumers, including Plaintiff, and would pass without objection in the trade.

83.    In connection with its sale of the Products, Defendant Electrolux gave a written warranty as defined in 15 U.S.C. § 2301(6). Specifically, Electrolux breached its written warranties to consumers, including Plaintiff Buchanan, in that the Electrolux Dryers, including the dryer purchased by Plaintiff, failed to perform as represented by Electrolux and Electrolux failed to provide non-defective dryers or replacement parts free of charge when the Electrolux

16

Dryers failed or malfunctioned during the warranty period or that Electrolux knew would eventually fail due to the defect.

84.     At the time Defendant Electrolux sold the Electrolux Dryers, including the dryer sold to Plaintiff Buchanan, it knew that if the Electrolux Dryers were defective and would fail, and that consumers, including Plaintiff Buchanan would incur significant costs in removing and re-installing the Electrolux Dryers, and would likely suffer additional substantial damages and losses.

85.     Defendant Electrolux is liable to Plaintiff Buchanan pursuant to 15 U.S.C.§ 2310(d)(1), because it breached the implied warranty of merchantability. Specifically, the Electrolux Dryers, including the dryer sold to the plaintiff, have defective drums that fail to seal the drum from the surrounding cabinet, thereby allowing the accumulation of lint behind the drum and in the heater pan causing failure, property damage and fire. Because of this, the Electrolux Dryers, including the dryer purchased by the Plaintiff, was not fit for their ordinary use as clothing dryers and were incapable of performing the functions that they were intended to perform.

86.     Defendant Electrolux is liable to Plaintiff Buchanan pursuant to 15 U.S.C.§ 2310(d)(1), because it breached its written warranties to Plaintiff Buchanan. Specifically, Electrolux breached its written warranties to Plaintiff Buchanan in that the Electrolux Dryers, including the dryer purchased by Plaintiff, failed to perform as represented by Electrolux and Electrolux failed to provide non-defective dryers or replacement parts free of charge when the Electrolux Dryers failed or malfunctioned during the warranty period or when Electrolux knew that the Electrolux Dryers would eventually fail due to the defect.

87. Pursuant to 15 U.S.C. § 2310(dXl), Plaintiff Buchanan is entitled to recover the damages caused by Electrolux's breach of the implied warranty of merchantability, which damages constitute the cost of replacing the Electrolux Dryer with comparable non-defective dryers sold by other manufacturers or a refund of the full purchase prices of the Electrolux Dryer, plus all costs reasonably incurred or will incur in removing and re-installing or replacing the Electrolux Dryer.

88. Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiff Buchanan is entitled to recover the damages caused by Electrolux's breach of express written warranties which damages constitute the cost of replacing the Electrolux Dryer with comparable non-defective dryers sold by other manufacturers or a refund of the full purchase price of the Electrolux Dryer, plus all costs reasonably incurred or will incur in removing and re-installing or replacing the Electrolux Dryer.

89. Plaintiff has sustained damages in excess of $50,000 by Electrolux's breach of the warranties, implied warranties and contract.

90. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff Buchanan is entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Buchanan in connection with the commencement and prosecution of this action.

91. As a direct and proximate result of Defendant Electrolux's conduct as set forth above, and the defects which rendered the Electrolux dryer purchased by Plaintiff unreasonably dangerous and unsafe and unfit for normal use as intended, Plaintiff Buchanan suffered damages, including but not limited to, destruction of the dryer, damage and loss of real and personal property, personal injury with resulting pain, suffering, mental anguish and physical disability, loss of past and future income and past and future medical expenses.

18

## COUNT IV: Failure to Warn

92.     Buchanan re-alleges and incorporates the preceding and succeeding paragraphs as if fully set forth herein.

93.     Defendant Electrolux is engaged in the business of designing, manufacturing, distributing, advertising, marketing, promoting, and/or selling appliances including dryers.

94.     Defendant Electrolux designed, manufactured, distributed, advertised, marketed, promoted and sold the Electrolux Dryers at issue herein, including the dryer purchased by Plaintiff, without substantial change in the condition in which they were manufactured, sold and distributed.

95.     The Electrolux Dryers, including the dryer purchased by Plaintiff, were in a defective and unreasonably dangerous condition when they left Defendant Electrolux's possession or control in that under normal conditions, usage and applications, they could not withstand use for which they were intended and that such defective and unreasonably dangerous conditions would likely result in failure and fire causing damage to the dryer and the property of consumers, including the Plaintiff, as well as threatening the consumers' personal safety causing personal injury.

96.     The defect in the Electrolux Dryers, including the dryer purchased by Plaintiff, created an unreasonably dangerous condition that Defendant Electrolux knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm to consumers, including Plaintiff.

97.     Upon information and belief, after the Electrolux Dryers, including the dryer purchased by the Plaintiff, left the control of the Defendant Electrolux, Defendant became aware, or in the exercise of ordinary care should have known, that the Electrolux Dryers, including the

19

dryer purchased by the Plaintiff, posed a substantial risk of harm to a reasonably foreseeable user or consumer, including Plaintiff Buchanan, and failed to take reasonable steps to give adequate warning or instruction or to take other reasonable action under the circumstances.

98. Electrolux has no reason to believe that consumers of the Electrolux Dryers, including plaintiff, would be aware of the foreseeable harm associated with the use of the Electrolux Dryers.

99. Prior to and after distributing the Electrolux Dryers which were sold to Buchanan, Electrolux had a legal duty to warn Buchanan about the defects in the Electrolux Dryers and the dangers those defects posed.

100. Defendant Electrolux unreasonably failed to provide warning or instruction to consumers, including the Plaintiff, about the defects in the Electrolux Dryers, including the dryer purchased by Plaintiff, and the dangers those defects posed.

101. As a direct and proximate result of Defendant Electrolux's conduct, including its failure to provide sufficient warning and instructions to the Plaintiff, and the defects which rendered the Electrolux dryer purchased by Plaintiff unreasonably dangerous and unsafe and unfit for normal use as intended, Plaintiff Buchanan suffered damages, including but not limited to, destruction of the dryer, damage and loss of real and personal property, personal injury with resulting pain, suffering, mental anguish and physical disability, loss of past and future income and past and future medical expenses.

### COUNT V: Fraudulent Concealment/Nondisclosure

102. Plaintiff Buchanan re-alleges and incorporates the preceding and succeeding paragraphs as if fully set forth herein.

20

103. At all relevant times, Defendant Electrolux knew that the Electrolux Dryers, including the dryer purchased by the Plaintiff, were defective in their design and manufacture, and would fail in advance of their anticipated useful life under ordinary use and conditions.

104. Defendant Electrolux also knew that the defects posed a serious risk of property damage and a safety risk to consumers, including Plaintiff Buchanan, but concealed that information from them.

105. The concealed information regarding the defects was material in that a reasonable consumer, including Plaintiff, would find that information important when deciding to buy a dryer.

106. Defendant Electrolux was and is under a duty to consumers, including Plaintiff Buchanan, to disclose these facts because Electrolux was in a superior position to know the truth about the quality and nature of the Electrolux Dryers, including the dryer purchased by Plaintiff.

107. Electrolux actively concealed from consumers, including Plaintiff Buchanan, the fact that the Electrolux Dryers, including the dryer purchased by Plaintiff, were and are defective and likely to fail in advance of their reasonably expected useful life and pose a serious fire hazard.

108. Defendant Electrolux fraudulently and intentionally concealed from and/or failed to disclose to consumers, including Plaintiff Buchanan, the facts described above with the intent to defraud and for the purpose of inducing consumers, including Plaintiff Buchanan, to act thereon by purchasing the Electrolux Dryers.

109. Defendant Electrolux knew that consumers, including Plaintiff Buchanan, would not purchase the Electrolux Dryers if Electrolux disclosed the defective nature of the design and manufacture of the Electrolux Dryers.

21

110.    Plaintiff Buchanan was unaware of the defective nature of the Electrolux Dryers and unaware that, because of those defects, the Electrolux Dryer she purchased was prone to malfunction and resulting fire, which would likely lead to property damage and loss and personal injury or death.

111.    Defendant Electrolux's misconduct has been knowing, wanton and/or reckless and/or shows reckless indifference to the interests, including the lives and safety of others.

112.    Had Defendant Electrolux disclosed the true defective nature of the Electrolux Dryers, Plaintiff Buchanan would not, in fact, have purchased the Electrolux Dryer.

113.    As a direct and proximate result of Defendant Electrolux's misconduct, including its fraudulent concealment, and the defects which rendered the Electrolux dryer purchased by Plaintiff unreasonably dangerous and unsafe and unfit for normal use as intended, Plaintiff Buchanan suffered damages, including but not limited to, destruction of the dryer, damage and loss of real and personal property, personal injury with resulting pain, suffering, mental anguish and physical disability, loss of past and future income and past and future medical expenses.

### COUNT VI- Negligence

114.    Plaintiff Buchanan re-alleges and incorporates the preceding and succeeding paragraphs as if fully set forth herein.

115.    Defendant Electrolux owed a duty to consumers, including Plaintiff Buchanan, to design, manufacture, produce, test, inspect, market, distribute, sell and warrant dryers with reasonable care and in a workman-like manner and had a duty to protect Plaintiff Buchanan from foreseeable and unreasonable risk of harm.

22

116. Defendant Electrolux breached that duty by, among other things, by defectively designing, manufacturing, testing, inspecting and distributing the Electrolux Dryers, including the dryer purchased by Plaintiff.

117. Defendant Electrolux knew or should have known that the Electrolux Dryers it designed, manufactured, produced, tested, inspected, marketed, distributed, and sold, including the dryer purchased by Plaintiff, would fail to perform as intended with ordinary and foreseeable use.

118. Defendant Electrolux knew or should have known that the Electrolux Dryers, including the dryer purchased by Plaintiff, created an unreasonable risk of fire and resulting catastrophic property damage, personal injury and death.

119. Due to Defendant Electrolux's superior knowledge of the defects in the Electrolux Dryers, including the dryer purchased by Plaintiff, Electrolux had a duty to disclose to the public, including the Plaintiff, the defective nature of the Electrolux Dryers. Electrolux had a further duty not to put the defective Electrolux Dryers on the market and had and has a continuing duty to take its unsafe products off the market and seek a recall from consumers.

120. Defendant Electrolux failed to exercise reasonable care with respect to the design, manufacture, production, testing, inspection, marketing, distribution and sale of the Electrolux Dryers, including the dryer purchased by the Plaintiff, by, among other things, failing to design and manufacture the Electrolux Dryers in a manner to ensure that under normal intended usage failure would not occur; failing to warn or to warn adequately and sufficiently, either directly or indirectly, the foreseeable users, including Plaintiff, of the defective nature of the Electrolux Dryers; and failing to represent accurately to consumers, including Plaintiff, whether directly or indirectly, that the Electrolux Dryers, including the dryer purchased by Plaintiff, posed an

23

unreasonable safety risk; and in failing to replace, repair or recall products it knew or should have known were defective.

121. As a direct and proximate result of Defendant Electrolux's negligence, and the defects which rendered the Electrolux dryer purchased by Plaintiff unreasonably dangerous, and unsafe and unfit for normal use as intended, Plaintiff Buchanan suffered damages, including but not limited to, destruction of the dryer, damage and loss of real and personal property, personal injury with resulting pain, suffering, mental anguish and physical disability, loss of past and future income and past and future medical expenses.

## COUNT VII: Violation of North Carolina Unfair and Deceptive Trade Practices Act

122. Plaintiff Buchanan re-alleges and incorporates the preceding and succeeding paragraphs as if fully set forth herein.

123. Defendant Electrolux had a duty to refrain from unfair and deceptive trade practices in its design, manufacture and sale of the Electrolux Dryers, including the dryer purchased by Plaintiff.

124. Defendant Electrolux violated the North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes, Sec. 75 Art.1, by designing, manufacturing, distributing, advertising, marketing, promoting and selling the defective Electrolux Dryers.

125. As set forth in the preceding paragraphs, Defendant Electrolux knowingly made a false and deceptive representations to consumers, including Plaintiff Buchanan, as to the characteristics of the Electrolux Dryers, including the dryer purchased by Plaintiff, and as to whether the Electrolux Dryers it designed, manufactured and/or sold were of a particular standard or quality and were suitable for their ordinary use, and by further denying the existence of any defect in the Electrolux Dryers..

24

126. As a direct and proximate result of Defendant Electrolux's conduct and violations of the North Carolina Unfair and Deceptive Trade Practices Act, and the defects which rendered the Electrolux dryer purchased by Plaintiff unreasonably dangerous and unsafe and unfit for normal use as intended, Plaintiff Buchanan suffered damages, including but not limited to, destruction of the dryer, damage and loss of real and personal property, personal injury with resulting pain, suffering, mental anguish and physical disability, loss of past and future income and past and future medical expenses.

<u>**COUNT VIII- Inadequate design**</u>

127. Plaintiff Buchanan re-alleges and incorporates the preceding and succeeding paragraphs as if fully set forth herein.

128. Defendant Electrolux acted unreasonably in designing the Electrolux Dryers, including the dryer purchased by Plaintiff.

129. At the time the Electrolux Dryers, including the dryer purchased by the Plaintiff left the control of Defendant Electrolux, Electrolux unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design that could have been reasonably adopted. Specifically, Defendant Electrolux could have adopted a design including a proper seal between the dryer drum and cabinet that would have prevented lint from accumulating behind the dryer drum and from accumulating inside the mechanical and electrical components of the dryer.

130. At the time the Electrolux Dyers, including the dryer purchased by the Plaintiff left the control of the Defendant Electrolux, such risks were already known and deemed unacceptable in the industry and industry standards included dryer designs that would effectively

correct the defect in the Electrolux Dryers, thereby keeping lint from accumulating inside the cabinet and components of the dryer and igniting, thus preventing or substantially reducing the risk of harm of fire. Such designs were possible without substantially impairing the usefulness, practicality, or desirability of the Electrolux Dryers.

131. Further, at the time the product left the control of the Defendant Electrolux, the design of the Electrolux Dryers, including the dryer purchased by the Plaintiff, was so unreasonable that a reasonable person, including the Plaintiff, aware of the relevant facts, would not have purchased or used the Electrolux Dryers.

132. As a direct and proximate result of Defendant Electrolux's conduct, including the inadequate design of the Electrolux Dryers, and the defects which rendered the Electrolux dryer purchased by Plaintiff unreasonably dangerous and unsafe and unfit for normal use as intended, Plaintiff Buchanan suffered damages, including but not limited to, destruction of the dryer, damage and loss of real and personal property, personal injury with resulting pain, suffering, mental anguish and physical disability, loss of past and future income and past and future medical expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court as follows:

1. That Plaintiff have and recover of the Defendant all damages allowed under the law in a sum exceeding $10,000.00, but less than $75,000.00, exclusive of costs, interests and attorneys fees.

2. That the costs of this action be taxed to the Defendants.

3. For a trial by jury.

26

4. For such other and further relief as the Court may deem just and proper.

This the _40_ day of September, 2012.

Respectfully submitted,

By: _____

BENOIT LAW FIRM, PLLC
Dexter G. Benoit (NC Bar# 41752)
*Attorneys for Plaintiff*
525 N. Tryon St. Ste. 1600
Charlotte, NC 28202
P: (704) 444-8384
F: (704) 973-7707

27